IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CARYN JANECKY MONTGOMERY, )
    Plaintiff, )
     )
v. ) CIVIL ACTION NO. 1:18-00013-N
     )
NANCY A. BERRYHILL, *Acting* )
*Commissioner of Social Security*, )
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Caryn J. Montgomery ("Montgomery") brought this action under 42 U.S.C. § 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*. Upon consideration of the parties' briefs (Docs. 13, 24) and those portions of the administrative record (Doc. 10) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **AFFIRMED** under sentence four of § 405(g) (applicable to SSI claims under § 1383(c)(3)).[1]

---

[1] With the consent of the parties the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 19, 20). The parties filed a Joint Motion for Waiver of Oral Argument (doc. 31) which was granted by the court. (Doc. 32).

    Montgomery also filed a separate motion to remand this action to the Commissioner on the basis that the Administrative Law Judge who issued the unfavorable decision on her applications was not constitutionally appointed. (Doc. 18). That motion has been denied by separate order (Doc. 33).

## I. *Background*

On September 12, 2014, Montgomery filed an application for SSI with the Social Security Administration ("SSA"), alleging disability beginning August 15, 2014.[2] After her application was initially denied, Montgomery requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review on January 13, 2015. The hearing was held with an ALJ on July 19, 2016. On January 13, 2017, the ALJ issued an unfavorable decision on Montgomery's application, finding her not disabled under the Social Security Act and thus not entitled to benefits. (*See* R. 20).

The Commissioner's decision on Montgomery's application became final when the Appeals Council for the Office of Disability Adjudication and Review denied her request for review of the ALJ's decision on November 17, 2017. (R. 1 – 6). Montgomery subsequently filed this action under § 405(g) and § 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the

---

[2] "Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 42 U.S.C. § 1382(a)). "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) (citing 20 C.F.R. § 416.202–03 (2005)).

Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II. *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). "'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

3

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[3] "In determining whether substantial evidence exists, [a

---

[3] Nevertheless, "[m]aking district courts dig through volumes of documents and transcripts would shift the burden of sifting from petitioners to the courts. With a typically heavy caseload and always limited resources, a district court cannot be expected to do a petitioner's work for him." *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *id.*, and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added).

Moreover, the Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford*, 363 F.3d at 1161 (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative

court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

However, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g., Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The

---

law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal).

[Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for…SSI requires that the claimant be disabled. 42 U.S.C. §…1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §…1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per curiam) (unpublished).[4]

The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1)

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

6

whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[5]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work,

---

[5] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

7

it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

When the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look

8

only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III. *Summary of the ALJ's Decision*

At Step One, the ALJ determined that although Montgomery worked after the application date, the work activity did not rise to the level of substantial gainful activity. (R. 12). At Step Two, the ALJ determined that Montgomery had the following severe impairments: a history of Guillain-Barre syndrome dating from 2007, peripheral neuropathy, hearing loss, auditory neuropathy, anxiety, and depressive disorder. (R. 12). At Step Three, the ALJ found that Montgomery did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in the Listing of Impairments. (R. 13).

At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).
>
> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

9

> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Montgomery had the RFC "to perform sedentary work as defined in 20 CFR 416.967(a),[6] subject to the following limitations: "no climbing ladders, ropes, scaffolds; occasional climbing ramps/stairs; occasional balance, stoop, kneel, crouch, crawl; frequent reaching, handling, fingering, feeling, pushing, pulling; occasional operating foot controls; can hear and understand simple oral instructions and communicate simple information; cannot use a telephone without captioning; no exposure to unprotected heights/hazardous machinery; no operating motor vehicles; can perform simple routine tasks in 2 hour increments with normal breaks for the duration of an 8-hour workday; occasional interaction with the public; and occasional change in routine work setting." (R. 15).

Based on the RFC and the testimony of a vocational expert (VE), the ALJ determined that Montgomery was unable to perform any past relevant work as a salesperson or an administrative assistant. (R. 19). The ALJ proceeded to Step Five

---

[6] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. *See also* 20 C.F.R. §§ 404.1567, 416.967.

and found that there exist a significant number of jobs in the national economy that Montgomery could perform given her RFC, age, education, and work experience. (R. 19). Thus, the ALJ found that Montgomery was not disabled. (R. 19).

## IV. *Analysis*

### A. The ALJ's findings concerning Montgomery's mental and hearing limitations and the RFC are supported by substantial evidence.

#### 1. Hearing Limitations

Montgomery first argues that the ALJ's RFC assessment concerning her hearing and mental limitations are not supported by substantial evidence in that it is inconsistent with the evidentiary record as a whole. Specifically, Montgomery contends that the ALJ failed to fully incorporate the severity of her hearing loss into the RFC since "the primary limitation indicated by the ALJ in the RFC is that she is precluded from using a telephone without captioning." (Doc. 13 at 9). Regarding the claimant's hearing loss, the ALJ opined as follows:

> Listing 2.10 requires Hearing loss with an average air conduction hearing threshold of 90 decibels or greater in the better ear and an average bone conduction hearing threshold of 60 decibels or greater in the better ear (see 2.00B2c). Alternatively, a word recognition score of 40 percent or less in the better ear determine using a standardized list of phonetically balanced monosyllabic words (see 2.00B2e). However, the claimant's hearing loss is not as extensive as the listing requires (Exhibit 12F). The requirements of Listing 2.10 are not met. (R. 13).

Montgomery notes that on August 13, 2014, "a hearing test by Premier Medical revealed Ms. Montgomery's hearing in the left ear to be at 90dB, and hearing in the right ear to also be at 90 dB." (Doc. 13 at 10). Montgomery argues that the accommodations made within the RFC are related to the hearing impairments, but

11

that they are inconsistent with the medical opinions of examining physicians Dr. Kimberly Elliot and Dr. John Yager.[7] Specifically, Montgomery argues that "occasional" interaction with the general public permits up to one-third of the day in interactions with the general public, and the ALJ placed no restrictions on job requirements involving communications with co-workers or supervisors. Montgomery maintains that "[t]he RFC assessment that Ms. Montgomery can spend up to a third of the workday dealing with the general public is inconsistent with the opinions of both Dr. Elliott and Dr. Yager that Ms. Montgomery must have work-

---

[7] Evidence considered by the Commissioner in making a disability determination may include medical opinions. *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). " 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)). "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citation omitted). While "the ALJ is not required to explicitly address each of those factors[,]" *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam) (unpublished), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179.

related situations where her communications with others are accommodated…" (Doc. 13 at 9).

Dr. John Davis performed a consultative psychological evaluation on Montgomery, and Dr. Yager performed a consultative neurological evaluation. Both Drs. Davis and Yager concluded that her loss of hearing was due to the Guillain-Barre syndrome, which caused nerve damage. Dr. Davis reported, "when I am looking at her, she is reading my lips and can understand fairly well. However, when she turns her back to me she has more difficulty understanding my speech even though I raise my voice to some extent." (R. 371).

Montgomery refutes the RFC assessment that she can hear and understand simple instructions and argues that it is not supported by the evidence in the record. Montgomery further maintains that the RFC assessment directly contradicts the opinions Drs. Elliot and Yager. Dr. Elliot concluded that Montgomery has "a well-established moderately, severe sensorineural hearing loss, especially, in her low frequencies. She has discrimination scores of 56% in the left and 52% on the right. She does fairly, well when seated in front of you talking; however, talking on a phone without captioning is going to be very difficult for her because she does not understand the words. Depending on the setting, this could be of significant hindrance to her in large crowds or in situations, where she has to use the phone." (R. 358). The ALJ noted that Dr. Elliot's "objective findings and her opinions are generally consistent with the record as a whole including the claimant's testimony and daily living activities." (R. 16-18). However, Montgomery argues that the ALJ's

13

decision "fails to explain the inconsistency between the opinions and evidence upon which the RFC purports to rely and the RFC assessment." (Doc. 13 at 13)

At the hearing, Montgomery testified that she could drive, had a college degree and worked part-time as a salesperson in a retail store until it closed. (Doc. 24-1). The Commissioner maintains the ALJ noted that Dr. Elmo Ozment, a treating physician, opined that Montgomery would probably need help traveling and that unprotected heights and working around machinery would not be good due to her lack of hearing. (R. 341). He concluded that she does not hear normal conversations, but has no trouble speaking.

In response to Montgomery's argument that the RFC is flawed because it places no limitations on job requirements involving communication with coworkers or supervisors, the Commissioner maintains that the "particular functional limitations were supported by the opinions of Drs. Ozment, Elliot and Yager." (Doc. 24 at 7). The Commissioner further maintains that the record reflects that the ALJ properly considered all medical evidence and the opinions, "along with other evidence discussed by the ALJ constituted substantial evidence supporting the ALJ's findings as to Plaintiff's hearing-related functional limitations." (Doc. 24 at 7).

**2. Mental Limitations**

In addition to the hearing limitations, Montgomery further argues that the ALJ failed to incorporate significant psychological limitations into the RFC assessment from the opinion of examining psychologist Dr. Davis. Specifically, Dr. Davis noted a moderate limitation in Montgomery's ability to communicate and

interact with employers and co-workers. Montgomery maintains that Dr. Davis's report cannot be read as finding that she "did not have mental health symptoms, but instead indicates his opinion that her mental symptoms would improve if her physical impairments were resolved." (Doc. 13 at 15). The ALJ found that:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 or 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. (R. 14).

The ALJ noted that Dr. Davis "examined the claimant and he noted that she reported problems with activities of daily living due to hearing loss rather than psychological issues." (R. 14). Dr. Davis reported that Montgomery was not lacking in her ability to concentrate and that although there were moderate difficulties, she "had no indications of a deficit in her overall concentration or attention." (R. 14). Dr. Davis also reported that Montgomery's "mental state is a function of her general medical condition and is likely to improve or deteriorate correlated with her general medical condition." (R. 367).

The Commissioner argues that the ALJ properly concluded that the Plaintiff could "hear and understand simple oral instructions and communicate simple information;…perform simple routine tasks in 2 hour increments with normal breaks

for the duration of an 8-hour workday; occasional interaction with the public; and occasional change in routine work setting." (Doc. 24 at 8). The Commissioner further maintains that the opinion of Dr. Davis, along with other medical providers "constituted substantial evidence supporting the ALJ's findings as to the Plaintiff's mental functional limitations." (Doc. 24-1 at 9). Additionally, the Commissioner states that "Dr. Davis had expressly qualified his opinion, stating that Plaintiff's mental problems were an 'add-on factor' and that '[d]ecisions about her disability need to be based on the general medical condition.'" (Doc. 24-1 at 9).

Dr. Davis's report failed to identify any mental difficulties Montgomery has interacting with others. Montgomery testified that she babysits her nieces and nephews, however, she will call someone if it becomes too difficult to babysit alone. The ALJ concluded that: "Dr. Davis's examination showed no indication of difficulties to contribute to a problem interacting with the public, supervisors, or coworkers. He states that she would be able to understand, remember and carry out even complex instructions to a fair degree." (R. 17). "He noted that her ability to perform complex tasks is fair, and he stated that the psychological condition is an 'add on factor,' deferring to the general medical condition, not mental capacity as a primary impairment." (R. 17-18).

The Commissioner contends that Montgomery has failed to show that Dr. Davis's opinion indicated greater functional limitations than found by the ALJ. In his report, Dr. Davis stated that her "interaction with staff and examiner was satisfactory." (R. 364). He also reported that she showed no abnormalities with communication and

that "there were no indications of deficits in her overall concentration or attention." (R. 364).

The undersigned agrees that the ALJ did not err in his findings and the RFC assessment as to Montgomery's mental and hearing limitations is supported by substantial evidence.

**B. The ALJ did not err in discounting Dr. Hecker's opinions regarding Montgomery's manipulative limitations.**

"Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight.' " *Winschel*, 631 F.3d at 1179 (quoting *Lewis*, 125 F.3d at 1440). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.' With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Id.* (quoting *Phillips*, 357 F.3d at 1240-41) (internal citation omitted). *See also, e.g.*, *Bloodsworth*, 703 F.2d at 1240 ("[T]he opinion of a treating physician may be rejected when it is so brief and conclusory that it lacks persuasive weight or where it is unsubstantiated by any clinical or laboratory findings…Further, the [Commissioner] may reject the opinion of any physician when the evidence supports a contrary conclusion."). Failure to clearly articulate the reasons for giving less weight to the opinion of a treating physician "constitutes reversible error." *Lewis*, 125 F.3d at 1440. "But if an ALJ articulates specific reasons for declining to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is

no reversible error." *Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 861 (11th Cir. 2017) (per curiam) (unpublished) (citing *Moore*, 405 F.3d at 1212). *Accord Huigens v. Soc. Sec. Admin., Comm'r*, 718 F. App'x 841, 844 (11th Cir. 2017) (per curiam) (unpublished).[8]

Montgomery's second assignment of error is that the ALJ erred in discrediting the opinions of treating neurologist Dr. Timothy Hecker regarding Montgomery's manipulative limitations. Montgomery makes reference to Social Security Ruling 96-9p, which states that "any significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosions of the unskilled sedentary occupational base." (Doc. 13 at 17). Montgomery maintains that the ALJ's RFC assessment is consistent with that of Dr. Yager's opinion and contends that "it is important to note that Dr. Yager did not conduct any objective neurological testing, and he had only brief exposure to Ms. Montgomery at the time of his consultative exam." (Doc. 13 at 18).

After Dr. Hecker conducted a neurological test on Montgomery, he concluded that the "electrophysiologic findings are compatible with mild sensory neuropathy. There is no evidence of demyelinating neuropathy on this exam." (Doc. 13 at 16). The Commissioner argues that Dr. Hecker's findings "essentially repudiated his earlier

---

[8] On January 18, 2017, the SSA substantially revised the regulations governing how the Commissioner considers medical opinions. However, those revisions apply only to claims filed on or after March 27, 2017, and are therefore inapplicable to Montgomery's present application. *See* 20 C.F.R. § 416.920c.

statements" concerning Montgomery's nerves and awarded more weight to Dr. Hecker's diagnosis concerning Montgomery's hearing and nerve issues.

Montgomery argues that Dr. Yager was not provided the results from Dr. Hecker's testing, nor had he had as much time with the patient. Moreover, Montgomery notes that Dr. Yager did not conduct neurological test, nor did he have a history of treating Montgomery regularly. Montgomery contends that because Dr. Hecker is the treating neurologist, his opinion should not have been given partial weight, and the ALJ failed to give specific details that supported the rejection of Dr. Hecker's opinion. Without specific inconsistencies, Montgomery maintains that the ALJ's reasoning is not supported by substantial evidence.

In response, the Commissioner notes that Dr. Hecker did not issue an opinion as to manipulative limitations. Because Dr. Hecker did not mention any work related functional limitations, the ALJ accorded weight to Dr. Hecker's diagnosis regarding the hearing and nerve issues, but not to the earlier opinion of disability which was inconsistent with the remainder of the evidence. (Doc. 24 at 11). The ALJ stated in the RFC that "Dr. Hecker's opinion is not fully consistent with the remainder of the evidence." As a result, the Commissioner argues, the ALJ gave greater weight to the opinion of Dr. Yager, which is more consistent with a preponderance of the evidence, including the objective medical evidence and Montgomery's testimony describing her abilities and activities. (R. 18).

Furthermore, the Commissioner contends that Dr. Yager's opinion was based on his own examination and testing, regardless of the fact that Dr. Hecker did issue

19

an opinion as to Montgomery's functional limitations. The undersigned finds that the ALJ's RFC is supported by substantial evidence and the decision to afford Dr. Hecker's opinion partial weight is articulated and likewise is supported by substantial evidence.

Accordingly, the Court **OVERRULES** Montgomery's claims of reversible error and finds that the Commissioner's final decision denying her benefits is due to be **AFFIRMED**.

## V. *Conclusion*

In accordance with the foregoing analysis, and the analysis in the Court's order denying Montgomery's separate motion for remand (Doc. 33) it is **ORDERED** that the Commissioner's final decision denying Montgomery's September 12, 2014 application for SSI is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 27th day of March 2019.

> */s/ Katherine P. Nelson*
> **KATHERINE P. NELSON**
> **UNITED STATES MAGISTRATE JUDGE**